**MUSICK, PEELER & GARRETT LLP**
333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Lawrence A. Tabb (State Bar No. 141471)
*l.tabb@musickpeeler.com*
Stephen M. Green (State Bar No. 201626)
*s.green@musickpeeler.com*

Attorneys for Defendant and Counterclaimant
ARCH INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,

Plaintiff,

v.

ARCH INSURANCE COMPANY, a Missouri corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 2:26-cv-08580-MFW-KSx

Assigned to:
Judge Michael W. Fitzgerald and
Magistrate Judge Karen L. Stevenson

**ARCH INSURANCE COMPANY'S ANSWER TO COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF**

Complaint Filed: August 4, 2026
Trial Date: Not Set

Defendant and Counterclaimant ARCH INSURANCE COMPANY ("Arch"), by and through its undersigned counsel of record, states the following as its Answer to the Complaint of Plaintiff ACE AMERICAN INSURANCE COMPANY ("ACE") on file in this action [ECF No. 1].

**THE PARTIES**

1. Arch admits the allegations in Paragraph 1 of the Complaint, on information and belief.

2. Arch admits the allegations in Paragraph 2 of the Complaint.

3. Answering Paragraph 3 of the Complaint, Arch lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the paragraph, and it denies the allegations in this paragraph on that basis.

4. Answering Paragraph 4 of the Complaint, Arch lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the paragraph, and it denies the allegations in this paragraph on that basis.

**JURISDICTION AND VENUE**

5. Arch admits the allegations in Paragraph 5 of the Complaint.

6. Arch admits the allegations in Paragraph 6 of the Complaint.

**GENERAL ALLEGATIONS**

7. Answering Paragraph 7 of the Complaint, Arch admits that on July 1, 2019, Tyler Skaggs, a professional baseball player for the Los Angeles Angels of Anaheim, died of a fentanyl overdose. Except as specifically admitted, Arch denies the allegations in this paragraph.

8. Answering Paragraph 8 of the Complaint, Arch admits that on June 29, 2021, Carli Skaggs, the spouse of Tyler Skaggs, filed a complaint against Angels Baseball LP ("Angels"), among others, in Los Angeles County Superior Court, Case No. 21STCV24121 ("California Lawsuit"). Arch further admits that venue in the California Lawsuit was subsequently transferred to Orange County Superior Court. The Complaint in the California Lawsuit is a writing, the terms of which speak for

themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

9. Answering Paragraph 9 of the Complaint, the Complaint in the California Lawsuit is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

10. Answering Paragraph 10 of the Complaint, Arch admits that on June 29, 2021, Debbie Hetman and Darrel Skaggs, the parents of Tyler Skaggs, filed Plaintiffs' Original Petition against the Angels, among others, in the District Court of Tarrant County, Texas, Case No. 352-326212-21 ("Texas Lawsuit"). The Petition in the Texas Lawsuit is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

11. Answering Paragraph 11 of the Complaint, the Complaint in the Texas Lawsuit is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

12. Answering Paragraph 12 of the Complaint, Arch admits that the Angels tendered its defense to the California Lawsuit and Texas Lawsuit to ACE and that ACE agreed to defend the Angels. Except as specifically admitted, Arch denies the allegations in this paragraph.

13. Answering Paragraph 13 of the Complaint, Arch admits that it issued Policy No. SSCGL0002702 to the Angels, effective February 1, 2019 to February 1, 2020. Arch further admits that in a letter dated September 29, 2021, from Arch's third party administrator American Specialty Insurance & Risk Services, Inc. to the Angels, Arch declined to participate in the defense of the Angels in the California Lawsuit and the Texas Lawsuit. Except as specifically admitted, Arch denies the allegations in this paragraph.

14. Answering Paragraph 14 of the Complaint, Arch admits that the Texas Lawsuit was dismissed, and on or about May 9, 2022, the First Amended Complaint was filed in the California Lawsuit. The First Amended Complaint in the California Lawsuit is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

15. Answering Paragraph 15 of the Complaint, Arch admits that it did not defend the Angels against the First Amended Complaint. Arch denies that it had an obligation to defend the Angels against the First Amended Complaint. Arch admits that ACE defended the Angels against the First Amended Complaint. Except as specifically admitted, Arch denies the allegations in this paragraph.

16. Answering Paragraph 16 of the Complaint, Arch admits that on or about November 15, 2022, the Second Amended Complaint was filed in the California Lawsuit. Arch admits that ACE defended the Angels against the Second Amended Complaint. The Second Amended Complaint is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

17. Answering Paragraph 17 of the Complaint, Arch admits that on or about February 17, 2023, the Third Amended Complaint was filed in the California Lawsuit. The Third Amended Complaint is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

18. Answering Paragraph 18 of the Complaint, Arch admits that it did not defend the Angels against the Third Amended Complaint. Arch denies that it had an obligation to defend the Angels against the Third Amended Complaint. Arch admits that ACE defended the Angels against the Third Amended Complaint. Except as specifically admitted, Arch denies the allegations in this paragraph.

19. Answering Paragraph 19 of the Complaint, Arch admits that on or about May 15, 2023, the Fourth Amended Complaint was filed in the California Lawsuit. The Fourth Amended Complaint is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

20. Answering Paragraph 20 of the Complaint, Arch denies that, on May 15, 2023, it had an obligation to defend the Angels. Arch admits that, on May 15, 2023, ACE defended the Angels against the Fourth Amended Complaint. Except as specifically admitted, Arch denies the allegations in this paragraph.

21. Answering Paragraph 21 of the Complaint, Arch admits that on or about August 28, 2025, the court in the California Lawsuit entered an order on the underlying plaintiffs' motion for summary adjudication of the Angels' eleventh affirmative defense of workers' compensation exclusivity, which was asserted in the Angels' Second Amended Answer to the Fourth Amended Complaint. The order is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

22. Answering Paragraph 22 of the Complaint, Arch denies the allegations in this paragraph.

23. Answering Paragraph 23 of the Complaint, Arch admits that a special verdict form and jury instructions were prepared with respect to the California Lawsuit. The special verdict form and jury instructions are writings, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

24. Answering Paragraph 24 of the Complaint, Arch admits that in a letter dated October 30, 2025, from Arch's third party administrator American Specialty Insurance & Risk Services, Inc. to the Angels, Arch agreed to participate in the defense of the Angels. Except as specifically admitted, Arch denies the allegations

in this paragraph.

25. Answering Paragraph 25 of the Complaint, Arch admits that in a letter dated November 14, 2025, ACE withdrew from the defense of the Angels in the California Lawsuit. Except as specifically admitted, Arch denies the allegations in this paragraph.

26. Answering Paragraph 26 of the Complaint, Arch admits that ACE paid defense costs that exceed the jurisdictional limit. Except as specifically admitted, Arch denies the allegations in this paragraph.

**FIRST CAUSE OF ACTION**

**(Equitable Subrogation)**

27. Arch incorporates by reference each preceding paragraph as though fully set forth herein.

28. Answering Paragraph 28 of the Complaint, Arch denies the allegations in this paragraph.

29. Answering Paragraph 29 of the Complaint, Arch admits that ACE defended the Angels in the Texas Lawsuit and in the California Lawsuit until Arch undertook the Angels' defense. Except as specifically admitted, Arch denies the allegations in this paragraph.

30. Answering Paragraph 30 of the Complaint, the ACE policy is a writing, the terms of which speak for themselves, and any characterization thereof is denied. Except as specifically admitted, Arch denies the allegations in this paragraph.

31. Answering Paragraph 31 of the Complaint, Arch denies the allegations in this paragraph.

**SECOND CAUSE OF ACTION**

**(Equitable Contribution)**

32. Arch incorporates by reference each preceding paragraph as though fully set forth herein.

33. Answering Paragraph 33 of the Complaint, Arch denies the allegations in this paragraph.

34. Answering Paragraph 34 of the Complaint, Arch admits that, after the Court's August 28, 2025 order, it assumed the Angels' defense. Except as specifically admitted, Arch denies the allegations in this paragraph.

35. Answering Paragraph 35 of the Complaint, Arch admits that ACE defended the Angels until Arch agreed to assume the Angels' defense. Except as specifically admitted, Arch denies the allegations in this paragraph.

36. Answering Paragraph 36 of the Complaint, Arch denies the allegations in this paragraph.

37. Answering Paragraph 37 of the Complaint, Arch denies the allegations in this paragraph.

38. Answering Paragraph 38 of the Complaint, Arch denies the allegations in this paragraph.

39. Answering Paragraph 39 of the Complaint, Arch denies the allegations in this paragraph.

40. Answering Paragraph 40 of the Complaint, Arch denies the allegations in this paragraph.

41. Answering Paragraph 41 of the Complaint, Arch denies the allegations in this paragraph.

## THIRD CAUSE OF ACTION

## (Equitable Indemnification)

42. Arch incorporates by reference each preceding paragraph as though fully set forth herein.

43. Answering Paragraph 43 of the Complaint, the paragraph states legal conclusions that do not require a response by Arch. Insofar as a response is required, Arch denies the allegations in this paragraph.

44. Answering Paragraph 44 of the Complaint, Arch denies the allegations in this paragraph.

45. Answering Paragraph 45 of the Complaint, Arch denies the allegations in this paragraph.

46. Answering Paragraph 46 of the Complaint, Arch denies the allegations in this paragraph.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief)**

47. Arch incorporates by reference each preceding paragraph as though fully set forth herein.

48. Answering Paragraph 48 of the Complaint, Arch admits the allegations in this paragraph.

49. Answering Paragraph 49 of the Complaint, Arch denies the allegations in this paragraph.

50. Answering Paragraph 50 of the Complaint, Arch denies the allegations in this paragraph.

51. Answering Paragraph 51 of the Complaint, Arch denies the allegations in this paragraph.

52. Answering Paragraph 52 of the Complaint, Arch denies the allegations in this paragraph.

53. Answering Paragraph 53 of the Complaint, Arch denies the allegations in this paragraph.

54. Answering Paragraph 54 of the Complaint, Arch admits the allegations in this paragraph.

55. Answering Paragraph 55 of the Complaint, the paragraph contains a request of the Court that does not require a response by Arch. Insofar as a response is required, Arch denies the allegations in this paragraph.

## PRAYER FOR RELIEF

1. Arch denies that ACE is entitled to any relief.
2. Arch denies that ACE is entitled to any relief.
3. Arch denies that ACE is entitled to any relief.
4. Arch denies that ACE is entitled to any relief.
5. Arch denies that ACE is entitled to any relief.
6. Arch denies that ACE is entitled to any relief.
7. Arch denies that ACE is entitled to any relief.
8. Arch denies that ACE is entitled to any relief.
9. Arch denies that ACE is entitled to any relief.
10. Arch denies that ACE is entitled to any relief.

## ARCH'S AFFIRMATIVE DEFENSES

Arch asserts the following affirmative defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or the burden of persuasion where such burden rests on ACE. Arch asserts the following affirmative defenses solely to the extent necessary to preserve its rights. The applicability of some or all of the affirmative defenses will depend on how this case develops. Arch has not yet obtained discovery from ACE and, therefore, Arch reserves the right to rely on any affirmative or other defenses or claims that may subsequently come to light and to amend or supplement this pleading to assert such additional defenses or claims.

1. Failure to State a Claim. The Complaint fails to state a claim for which relief can be granted.

2. Statute of Limitations. ACE's alleged rights and claims, if any, are barred by the applicable statute(s) of limitations.

3. Failure to Mitigate. ACE's claims are barred, in whole or in part, to the extent that it failed to mitigate, minimize or avoid any damage that it allegedly sustained.

4. Lack of Coverage. ACE's claims are barred, in whole or in part, because there is no coverage for the Texas Lawsuit and/or the California Lawsuit under any insurance policy for which Arch is allegedly responsible and that is the subject of the Complaint because of policy provisions, exclusions, limitations, or endorsements contained in or incorporated by reference, expressly or impliedly, in the policy.

5. Conditions Not Satisfied. ACE's claims are barred, in whole or in part, to the extent that all of the conditions of any insurance policy for which Arch is allegedly responsible and that is the subject of the Complaint were not satisfied.

6. Deductible or Retention. ACE's claims are barred, in whole or in part, to the extent that the deductible or retention of any insurance policy for which Arch is allegedly responsible and that is the subject of the Complaint was not satisfied.

7. "Employer's Liability" Exclusion. ACE's claims are barred, in whole or in part, to the extent that the "Employer's Liability" Exclusion, or any substantially similar exclusion, contained in any insurance policy for which Arch is allegedly responsible and that is the subject of the Complaint applies. The exclusion bars coverage for "bodily injury" to an employee of the insured arising out of and in the course of: (a) employment by the insured; or (b) performing duties related to the conduct of the insured's business. The exclusion further bars coverage for "bodily injury" to the spouse, child, parent, brother or sister of the employee as a consequence of the foregoing.

8. "Other Insurance." ACE's claims are barred, in whole or in part, to the extent that any "other insurance" provision of any insurance policy for which Arch is allegedly responsible and that is the subject of the Complaint applies and renders any insurance afforded by Arch excess of any insurance afforded by ACE.

9. Set-off. Arch is entitled to a credit, setoff, or offset for all sums of money received or available from or on behalf of any other alleged wrongdoer(s) for the same loss that is alleged in the Complaint.

10. Contribution, Subrogation or Equitable Indemnity. Arch denies liability for the allegations against it in the Complaint, but in the event liability were found, Arch is entitled to an apportionment of liability among any other parties, including ACE, under any equitable doctrine, including contribution, subrogation or equitable indemnity.

11. No Legal Liability. ACE's claims are barred, in whole or in part, to the extent that no legal liability has arisen to indemnify or otherwise pay, relative to the allegations that are the subject of the Complaint.

12. Unclean Hands. ACE's claims are barred, in whole or in part, to the extent that the doctrine of unclean hands applies.

13. Failure to Preserve Evidence. To the extent that ACE has destroyed evidence, lost evidence, allowed evidence to be lost, suppressed evidence, or failed to preserve evidence, Arch's liability, if any, is reduced or eliminated.

14. Waiver. ACE's claims are barred, in whole or in part, to the extent that it waived the conduct that is alleged in the Complaint.

15. Release. ACE's claims are barred, in whole or in part, to the extent that it released its rights, claims and causes of action against Arch.

16. Equitable Estoppel. ACE's claims are barred, in whole or in part, to the extent that the doctrine of equitable estoppel applies.

17. Laches. ACE's claims are barred, in whole or in part, to the extent that the doctrine of laches applies.

18. *Res Judicata*/Collateral Estoppel. ACE's claims are barred, in whole or in part, to the extent that the doctrines of *res judicata* and/or collateral estoppel apply.

## DEFENSES RESERVED

Arch gives notice that it reserves the right to rely upon any other defenses that may become apparent during fact or expert discovery in this action, and reserves the right to further amend this Answer and to assert any such defenses.

WHEREFORE, Arch respectfully request the Court enter judgment in its favor and against ACE that:

1. ACE's Complaint be dismissed with prejudice as against Arch;

2. Arch be awarded its costs; and

3. Arch be awarded such other and further relief as the Court may deem just and proper.

DATED: November 18, 2026 MUSICK, PEELER & GARRETT LLP

By: */s/ Stephen M. Green*
Stephen M. Green
Attorneys for Defendant and Counterclaimant
ARCH INSURANCE COMPANY

**COUNTERCLAIM FOR DECLARATORY RELIEF AGAINST ACE AMERICAN INSURANCE COMPANY**

COMES NOW, Defendant and Counterclaimant ARCH INSURANCE COMPANY ("Arch"), for its Counterclaim against Plaintiff and Counter-Defendant ACE AMERICAN INSURANCE COMPANY ("ACE"), and alleges as follows:

**INTRODUCTION**

1. This is an insurance allocation action in which Arch and ACE seek a judicial declaration of their respective rights and obligations, solely as between them, under policies of liability insurance for the cost of defending their mutual insured, Angels Baseball LP ("Angels"), against the now-resolved actions captioned: (i) *Hetman, et al. v. Angels Baseball LP, et al.,* Tarrant County District Court, Texas, Case No. 352-32621-21 ("Texas Lawsuit"); and (ii) *Skaggs, et al. v. Angels Baseball LP, et al.,* Orange County Superior Court, Case No. 30-2021-01231706-CU-PO-NJC ("California Lawsuit") (collectively, "Underlying Litigation").

2. ACE's Complaint [ECF No. 1] alleges that Arch owed the primary duty to defend the Angels against the Underlying Litigation. ACE's position is based upon the meritless contention that its duty to defend was never triggered or, at the very least, it was terminated after the court in the Underlying Litigation entered an order on August 28, 2025, granting partial summary judgment to the underlying plaintiffs on the Angels' affirmative defense of workers' compensation exclusivity. In the alternative, ACE's Complaint alleges that Arch and ACE each owed a co-primary duty to defend the Angels, and, therefore, that Arch must reimburse ACE for its equitable share of the cost of defending the Angels.

3. This Counterclaim by Arch seeks a judicial declaration that ACE owed the primary duty to defend the Angels against the Underlying Litigation, from the date of the Angels' tender to ACE through at least October 30, 2025, the date when Arch agreed to defend the Angels and the effective date of when ACE advised it

would withdraw its defense of the Angels. This Counterclaim also seeks a judicial declaration that Arch did not owe the primary duty to defend the Angels against the Underlying Litigation because: (i) the allegations therein did not give rise to a potential for coverage under the Arch Policy; (ii) no potential for coverage under the Arch Policy possibly arose before Arch received actual notice of the court's August 28, 2025 summary adjudication order from the Angels; (iii) Arch's defense obligation only arose on October 30, 2025, when Arch agreed to defend the Angels; and (iv) ACE owed the primary duty to defend the Angels because the Arch Policy's "other insurance" clause renders it excess of the ACE policy.

4. This Counterclaim arises out of the transaction or occurrence that is the subject matter of ACE's Complaint against Arch in this action and does not require adding another party, much less another party over whom the Court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a).

**JURISDICTION AND VENUE**

5. The Court has jurisdiction based on diversity of citizenship pursuant to 29 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000; the parties are citizens of different states; and an actual justiciable controversy exists between the parties regarding the existence and extent of insurance coverage available under policies issued by certain parties to certain other parties, relative to the Underlying Litigation. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the alleged events or omissions giving rise to the claims occurred in this district.

**THE PARTIES**

6. Arch is, and at all times relevant herein was, a corporation organized and existing under the law of the State of Missouri with a principal place of business in the State of New Jersey.

7. Arch is informed and believes, and based thereon alleges, that ACE is, and at all times relevant herein was, a corporation organized and existing under the

law of the Commonwealth of Pennsylvania with a principal place of business in the Commonwealth of Pennsylvania.

## THE ACE POLICY

8. ACE issued Standard Workers Compensation and Employers Liability Policy No. WLR C65435858 to the Angels, effective February 1, 2019 to February 1, 2020 ("ACE Policy").

9. Part Two (Employers Liability Insurance) of the ACE Policy "applies to bodily injury by accident [] includ[ing] resulting death," where: (1) the bodily injury "arise[s] out of and in the course of the injured employee's employment by [the Angels]"; (2) the employment was "necessary or incidental to" the Angels' work; and (3) the "bodily injury by accident" occurred during the policy period. Part Two of the ACE Policy provides, "We will pay all sums that you [*i.e.,* the Angels] legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance." Part Two further provides, "We have the right and duty to defend, at our expense, any [] suit against you for damages payable by this insurance."

10. Part Two of the ACE Policy contains an exclusion that states, "This insurance does not cover [] [a]ny obligation imposed by a workers compensation [] law, or any similar law."

11. Part Two of the ACE Policy contains the following "Other Insurance" clause:

> We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss if paid.

12. ACE agreed to provide a defense to the Angels pursuant to Part Two of the ACE Policy.

**THE ARCH POLICY**

13. Arch issued Commercial General Liability Policy No. SSCGL0002702 to the Angels, effective February 1, 2019 to February 1, 2020 ("Arch Policy"). Its Insuring Agreement states, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The Arch Policy requires "bodily injury" and "property damage" be caused by an "occurrence," and that the "bodily injury" and "property damage" occur during the policy period. It defines "bodily injury" to mean, "bodily injury, [] including care, loss of services or death resulting from any of these at any time." It defines "property damage" to mean, in relevant part, "physical injury to tangible property." It defines "occurrence" to mean, in relevant part, "an accident."

14. The Arch Policy contains the following Employer's Liability Exclusion:

> This insurance does not apply to:
>
> . . .
>
> e. Employer's Liability
>
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> (a) Employment by the insured; or
>
> (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

15. The Arch Policy contains the following "Other Insurance" clause:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

. . .

b. Excess Insurance

(1) This insurance is excess over:

. . .

(d) Any other valid and collectible insurance applying to the loss except for insurance bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

. . .

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

16. Although the ACE Policy's "Other Insurance" clause merely states the ACE Policy will pay equal shares with other insurance, the Arch Policy's "Other Insurance" clause clearly states it is excess of any other valid and collectible insurance. This renders the Arch Policy excess of the ACE Policy with regard to any duty to defend the Angels against the Underlying Litigation.

**THE UNDERLYING LITIGATION**

17. On June 29, 2021, Debbie Hetman and Darrel Skaggs, the parents of Tyler Skaggs, filed the Original Petition in the Texas Lawsuit. Also, on June 29, 2021, Carli Skaggs, the wife of Tyler Skaggs, filed the original Complaint in the California Lawsuit. The initial pleadings in both actions were filed by the same law firm and allege substantively similar facts, as relevant to this action.

18. More particularly, the initial pleadings allege that on July 1, 2019, Tyler Skaggs was found dead in his hotel room while traveling with his team, the Angels, to play the Texas Rangers. The initial pleadings allege that Eric Kay, the Angels' Director of Communications, also traveled with the team; that Kay had a long history of drug abuse; and that the Angels knew about Kay's problems with drug abuse and addiction. The initial pleadings allege that Kay visited Skaggs' room near midnight on the night of Skaggs' death, and that Kay provided Skaggs with an oxycodone pill that, unbeknownst to Skaggs, was laced with fentanyl, which experts concluded caused his death.

19. The initial pleadings allege facts – in addition to those referenced above – supporting that Skaggs was in the course of employment when he died, including: when Skaggs joined the Angels, "he found a toxic environment that pressured players to play through the pain"; "Tyler missed the 2015 season due to Tommy John surgery"; in 2016, Skaggs still experienced "persistent pain"; Skaggs "continued to suffer from nagging injuries throughout the 2017 and 2018 seasons"; "The Angels granted [Kay] unfettered access to the players even though they knew or should have known that he was trafficking in illicit drugs"; "[Kay's] improper acts of providing illegal drugs were either required by the Angels or 'incidental' to Kay's duties"; "Kay told the DEA that at least two executives in the Angels organization knew he was dealing illicit drugs to Angels' players"; "Kay [] was acting in the course and scope of his employment at all relevant times"; and "The Angels owed Tyler a duty to intervene to prevent harm from illegal drug use and a

duty to prevent their agent [Kay] from providing Tyler with dangerous illegal drugs."

20. The initial pleadings allege the Angels were liable for negligent hiring, retention, and supervision of their employee, Kay. The initial pleadings further allege that even if the Angels engaged in no misconduct, they were vicariously liable for the conduct of Kay, who allegedly was employed in a managerial capacity and acting within the scope of employment when he allegedly provided drugs to Skaggs, and his actions allegedly were incidental to his duties and could be reasonably foreseen by the Angels. Thus, the initial pleadings allege causes of action against the Angels for wrongful death (negligence) and wrongful death (negligent hiring, retention and supervision).

21. Because the factual allegations in the initial pleadings supported a finding that Skaggs' death arose out of and in the course of his employment by the Angels, ACE agreed to defend the Angels against the Underlying Litigation under Part Two of the ACE Policy. For the same reason, the factual allegations supported the conclusion that the Employer's Liability Exclusion in the Arch Policy applied to bar a duty to defend the Angels against the Underlying Litigation. Accordingly, in a letter from Arch's third party administrator American Specialty Insurance & Risk Services, Inc. to the Angels dated September 29, 2021, Arch declined to participate in the defense of the Angels in connection with the Underlying Litigation.

22. On April 22, 2022, the Texas Lawsuit was dismissed and, on May 9, 2022, the First Amended Complaint was filed in the California Lawsuit adding Skaggs' parents as co-plaintiffs with Carli Skaggs.

23. Over the next two years, the Angels filed a series of demurrers, and Plaintiffs filed several amended complaints in the Underlying Litigation. The operative complaint was the Fourth Amended Complaint, which the Angels answered in July 2023. During this time, neither the Angels, ACE, nor anyone else challenged Arch's coverage position.

24. In its Answer to the Fourth Amended Complaint, the Angels asserted fourteen affirmative defenses, including workers compensation exclusivity. That defense alleged that all claims, "are barred by the exclusive remedy provision of California's Workers' Compensation Statute" and "Plaintiffs must pursue their remedies, to the extent they are entitled to any, in California's workers compensation system, and are barred from doing so in a civil action." An element of workers compensation exclusivity is that the subject employee's injury occurred in the course of employment.

25. On September 29, 2023, the Angels filed a First Amended Answer to the Fourth Amended Complaint in the Underlying Litigation, asserting thirteen affirmative defenses, including workers compensation exclusivity again.

26. On February 20, 2024, the Angels filed a Second Amended Answer to the Fourth Amended Complaint in the Underlying Litigation. The Second Amended Answer included an eleventh affirmative defense of workers' compensation exclusivity. In that affirmative defense (see, ¶44), the Angels alleged that a requirement of workers' compensation exclusivity includes "that the employee be acting in the course of employment at the time of the injury." In the affirmative defense (see, ¶46), the Angels further alleged, "Through briefing, oral argument, and amendments to their pleadings, Plaintiffs have insisted they sufficiently alleged claims based on allegations that Mr. Skaggs' injury occurred while he was working, or performing a task for or related to the work Angels Baseball hired him to do – i.e., that the injury occurred in the course of Mr. Skaggs' employment."

27. On September 1, 2023, the Angels also filed a motion for judgment on the pleadings based on workers compensation exclusivity. When the trial court denied the motion, the Angels filed a Petition for Writ of Mandate in the Court of Appeals. The Petition argues, in part, "The trial court erroneously denied the motion [] failing to recognize that plaintiffs have squarely alleged that Mr. Skaggs died while taking drugs to treat prior work-related injuries, thereby establishing that

plaintiffs' claims fall within the exclusive jurisdiction of the workers compensation system…" On May 2, 2024, the Court of Appeals, Fourth Appellate District, Division Three, summarily denied the Petition (COA Docket No. G064001). Thus, the Angels were not foreclosed from again raising the issues presented by the Petition after final adjudication.

28. Accordingly, through their filing of the Answer, First Amended Answer, Second Amended Answer, motion for judgment on the pleadings, and petition for writ of mandate, the Angels' litigation position in the Underlying Litigation was consistently that the factual allegations supported the conclusion that Skaggs' death occurred while he was in the course of employment. That position was also consistent with the conclusion of both ACE and Arch, in their consideration of the allegations in the initial pleadings, that the allegations fell within the scope of Part Two of the ACE Policy, and within the scope of the Arch Policy's Employer's Liability Exclusion.

29. On June 2, 2025, the plaintiffs in the Underlying Litigation filed a motion for summary adjudication of, in part, the Angels' affirmative defense of workers compensation exclusivity, set forth in the Second Amended Answer to the Fourth Amended Complaint. On August 28, 2025, the trial court granted the motion. In the order, the trial court found, in part, "Tyler was not acting within the course and scope of his employment by Angels Baseball…"

30. In a letter dated October 13, 2025, the Angels requested that Arch reconsider its coverage position in light of the trial court's August 28, 2025 order.

31. On October 30, 2025, Arch's third party administrator American Specialty Insurance & Risk Services, Inc. informed the Angels that Arch agreed, subject to a reservation of rights, to participate in the Angels' defense against the Underlying Litigation on a going forward basis together with any other insurers, including ACE, that agreed to do so.

32. On November 14, 2025, ACE wrote to the Angels and stated, "Chubb [*i.e.,* ACE] hereby withdraws its defense of the Angels effective October 30, 2025." Thus, ACE apparently relied upon Arch's agreement to defend the Angels as grounds to breach its own duty to defend, effective the very same day that Arch's agreement to defend incepted.

33. However, despite agreeing to defend the Angels through October 30, 2025, Arch is informed, believes, and therefore alleges that ACE has failed and refused to pay – or even audit – several invoices totaling over $4,000,000 for the defense of the Angels that are for fees and costs incurred before October 30, 2025. Consequently, Arch has been contacted by third parties seeking payment of sums for which ACE expressly agreed to provide payment on behalf of the Angels, either as a matter of its contractual duty to defend or as a volunteer.

34. Arch provided the Angels with a defense against the Underlying Litigation from October 30, 2025, through the dismissal of that action on or about March 3, 2026.

## FIRST CAUSE OF ACTION

### Declaratory Relief

35. Arch re-alleges and incorporates herein by reference each and every allegation and statement set forth in the preceding Paragraphs 1 through 34, as though each was fully set forth herein.

36. Arch understands that in the Complaint, ACE contends that Arch owed the primary duty to defend the Angels in the Underlying Litigation under the Arch Policy, and that Arch owes reimbursement to ACE for substantial sums that ACE paid in the defense of the Angels, and for additional sums still sought by third parties against ACE for that defense.

37. Arch denies that it owed the primary duty to defend the Angels in the Underlying Litigation under the Arch Policy. The initial pleadings in the Underlying Litigation allege facts supporting the conclusion that the Employer's

Liability Exclusion in the Arch Policy barred a duty to defend the Underlying Litigation before Arch received notice of the trial court's August 28, 2025 Order granting summary adjudication to the underlying Plaintiffs. The same factual allegations also support the conclusion that Part Two of the ACE Policy afforded a duty to defend the Angels. Thus, ACE, rather than Arch, owed the primary duty to defend the Angels during that timeframe.

38. Additionally, to the extent that Arch and ACE both had a duty to defend the Angels in the Underlying Litigation during the same time period, Arch's duty to defend is excess to ACE's duty to defend, pursuant to the Arch Policy's "Other Insurance" clause.

39. Accordingly, Arch contends that ACE owed the primary duty to defend the Angels in the Underlying Litigation under the ACE Policy from the outset of the Underlying Litigation through at least October 30, 2025.

40. An actual controversy exists between Arch and ACE regarding their respective rights and obligations in connection with the defense of the Angels in the Underlying Litigation, in that Arch contends:

(a) Arch did not owe a duty to defend the Angels in the Underlying Litigation before it received notice of the trial court's August 28, 2025 summary adjudication order;

(b) ACE owed the primary duty to defend the Angels in the Underlying Litigation from the date of its tender to ACE through at least October 30, 2025, when Arch agreed to defend the Angels; and

(c) To the extent that both ACE and Arch had a duty to defend the Angels during any concurrent time period of the Underlying Litigation, the Arch Policy is excess of the ACE Policy by operation of their "Other Insurance" provisions, and ACE therefore had the primary duty to defend the Angels during that time.

41. Arch seeks a judicial declaration of the respective rights and obligations of Arch and ACE with respect to the defense of the Angels in the Underlying Litigation, including with regard to the referenced contentions. The requested declarations are necessary and proper at this time so that the parties will be bound by the same interpretation of the Arch Policy and the ACE Policy, and the adjudication of their rights and obligations.

## PRAYER FOR RELIEF

**WHEREFORE,** Arch prays for judgment as follows:

1. A declaration and judgment, binding on all parties to this action, regarding Arch's and ACE's respective rights and obligations under the Arch Policy and the ACE Policy, and in equity, in connection with the defense of the Angels in the Underlying Litigation;

2. Costs of suit; and

3. Such other and further relief as the Court deems just and proper.

DATED: November 18, 2026 MUSICK, PEELER & GARRETT LLP

By: */s/ Stephen M. Green*
Stephen M. Green
Attorneys for Defendant and Counterclaimant, ARCH INSURANCE COMPANY