Kevin A. Dorse, Esq. (State Bar No. 146942)
kdorse@tocounsel.com
Jessica N. Walker, Esq. (State Bar No. 275398)
jwalker@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Attorneys for Proposed Plaintiff-Intervenor, Theodora Oringher PC

THEODORA ORINGHER COUNSELORS AT LAW

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation<br><br>Plaintiff,<br><br>vs.<br><br>ARCH INSURANCE COMPANY, a Missouri corporation; and Does 1-10, inclusive,<br><br>Defendants. | Case No. 2:26-cv-08580-MWF-KSx<br>*[Assigned to Judge Michael W. Fitzgerald, Courtroom 5A;Referred to Chief Magistrate Judge Karen L. Stevenson, Courtroom 580]*<br><br>**PROPOSED PLAINTIFF-INTERVENOR THEODORA ORINGHER PC'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**<br><br>Date: December 2, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 5A<br><br>Action Commenced: August 4, 2026 |

THEODORA ORINGHER COUNSELORS AT LAW

# TABLE OF CONTENTS

Page


I. SUMMARY OF REPLY ..... 1

II. STATEMENT OF ADDITIONAL FACTS ..... 2

A. ACE and Its Counsel Know ACE Did Not and Has Not "Paid the Angels' Defense Costs . . . Through the Entry of the August 2025 Order" ..... 2

III. ARGUMENT ..... 4

A. The Court Should Grant Permissive Intervention Under Rule 24(b) ..... 4

1. The Governing Standard ..... 4

2. The Motion Is Timely ..... 5

3. Independent Jurisdiction Exists Based on Diversity ..... 6

4. The Firm's Claims Share Common Questions of Law and Fact With the Main Action ..... 6

5. The Court Need Not Resolve the Carriers' Contested Rule 24(a) Questions ..... 8

6. Intervention Will Not Cause Undue Delay or Prejudice ..... 8

7. The Discretionary Factors Favor Intervention ..... 10

B. Additionally, the Firm Is Entitled to Intervene as of Right Under Rule 24(a)(2) ..... 10

1. The Governing Standard ..... 10

2. The Firm Has a Significantly Protectable Interest ..... 11

3. The Firm Has Article III Standing ..... 13

4. ACE's Authorities Are Inapposite ..... 14

C. Disposition of This Action Will Practically Impair the Firm's Ability to Protect Its Interest ..... 16

1. The Standard Is Practical Impairment, Not Preclusion ..... 16

2. The Allocation Ruling Will Decide Whom the Firm Can Collect From ..... 16

3. The Carriers' Prematurity Cases Support Intervention ..... 17

4. The Firm Has No Adequate Alternative Forum ..... 18

D. The Carriers Do Not Adequately Represent the Firm's Interests ......... 18

1. The Burden Is Minimal ......... 18

2. ACE's Misstatements Demonstrate That It Cannot Represent the Firm ......... 18

3. No Presumption of Adequacy Applies, and Any Presumption Is Rebutted ......... 19

E. The Court Should Grant Limited-Scope Intervention on the Firm's Proposed Conditions ......... 21

IV. CONCLUSION ......... 21

THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**


*Adam Joseph Res. v. CNA Metals Ltd.*,
919 F.3d 856 (5th Cir. 2019) .......... 15

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) .......... 12, 18, 19

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) .......... 4

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) .......... 19

*Bureerong v. Uvawas*,
167 F.R.D. 83 (C.D. Cal. 1996) .......... 5

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) .......... 11

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .......... 10, 13, 18, 20

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .......... 20

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......... 16, 18

*Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*,
No. 5:21-CV-08764-EJD, 2023 WL 7284162 (N.D. Cal. Nov. 3, 2023) .......... 8

*Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Morrow-Meadows Corp.*,
No. CV16-7454-MWF (ASx), 2017 WL 11631998 (C.D. Cal. Aug. 1, 2017) .......... passim

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .......... 12, 13

*Ford Gum & Mach. Co. v. Smackin' Snacks LLC*,
No. CV 25-01529-MWF (SKx), 2025 WL 2019827 (C.D. Cal. June 3, 2025)

......passim

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) ......5, 6

*Greene v. United States*,
996 F.2d 973 (9th Cir. 1993) ......8, 11

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ......20

*Liberty Mutual Insurance Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005) ......14

*Luster v. Puracap Lab'ys, LLC*,
No. CV 18-503-MN-JLH, 2023 WL 157638 (D. Del. Jan. 11, 2023) ......15

*Moseley v. Grange Mutual Casualty Co.*,
No. 3:03CV-21-S, 2012 WL 2376067 (W.D. Ky. June 22, 2012)......14

*Mt. Hawley Insurance Co. v. Sandy Lake Properties, Inc.*,
425 F.3d 1308 (11th Cir. 2005) ......14

*Newman v. Mut. Life Ins. Co. of N.Y.*,
206 F.R.D. 410 (D. Md. 2002) ......15

*O'Connell v. Smith*,
No. CV-13-01905-MWF (PJWx), 2014 WL 12773900 (C.D. Cal. Aug. 18, 2014)
......4, 5, 21

*Pollara v. Radiant Logistics Inc.*,
2012 WL 12887097 (C.D. Cal. Nov. 1, 2012) ......5

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ......10, 20

*SEC v. U.S. Realty & Improvement Co.*,
310 U.S. 434 (1940)......7

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*,
69 F.3d 1377 (7th Cir. 1995) ......9

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993) ......12

THEODORA TO ORINGHER COUNSELORS AT LAW

*Smith v. Pangilinan*,
651 F.2d 1320 (9th Cir. 1981) .......... 16

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) .......... 10

*Standard Fabrics Int'l, Inc. v. Rainbow USA, Inc.*,
No. CV15-8218-MWF (KSx), 2016 WL 11760192 (C.D. Cal. Feb. 5, 2016) .. 4, 5, 7, 9

*Stockton v. United States*,
493 F.2d 1021 (9th Cir. 1974) .......... 15, 16

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 11, 12

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) .......... 13

*Travelers Indemnity Co. of Connecticut v. Newlin*,
498 F. Supp. 3d 1262 (S.D. Cal. 2020) .......... 14

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .......... 12

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) .......... 10

*United States v. Idaho*,
342 F.R.D. 144 (D. Idaho 2022) .......... 10, 21

*United States v. Stringfellow*,
783 F.2d 821 (9th Cir. 1986) .......... 19

*Van Hoomissen v. Xerox Corp.*,
497 F.2d 180 (9th Cir. 1974) .......... 21

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) .......... 7, 15

*Washington v. FDA*,
670 F. Supp. 3d 1150 (E.D. Wash. 2023) .......... 15

*Washington v. U.S. Food & Drug Admin.*,
108 F.4th 1163 (9th Cir. 2024) .......... 13



THEODORA ORINGHER COUNSELORS AT LAW

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) .......... 10, 11

*XL Specialty v. Perry*, No. CV 11-02078-RGK (JCGx), 2011 WL 9700995 (C.D. Cal. Nov. 30, 2011). 15

**State Cases**

*Compulink Mgmt. Ctr., Inc. v. St. Paul Fire & Marine Ins. Co.*, 169 Cal. App. 4th 289 (2008) .......... 7

*Handy v. First Interstate Bank*, 13 Cal. App. 4th 917 (1993) .......... 17

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015) .......... 11, 14

*Haskel, Inc. v. Superior Ct.*, 33 Cal. App. 4th 963 (1995) .......... 20

*Intergulf Development LLC v. Superior Court*, 183 Cal. App. 4th 16 (2010) .......... 17

*Janopaul + Block Cos. v. Superior Ct.*, 200 Cal. App. 4th 1239 (2011) .......... 8, 17

*Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460 (2008) .......... 18

*Royal Indemnity Co. v. United Enterprises, Inc.*, 162 Cal. App. 4th 194 (2008) .......... 14

**State Statutes**

Cal. Civ. Code § 2860 .......... 11, 13

Cal. Civ. Code § 2860(c) .......... passim

**Federal Rules**

Fed. R. Civ. P 24(a) .......... 8

Fed. R. Civ. P. 24 .......... 6, 7, 16

Fed. R. Civ. P. 24(a)(2) .......... 17, 22



THEODORA ORINGHER COUNSELORS AT LAW

Fed. R. Civ. P. 24(b) .......... 7, 8, 21, 22

Fed. R. Civ. P. 24(b)(3) .......... 5

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed.) .......... 20

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1911 (3d ed.) .......... 7

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (3d ed.) .......... 5

THEODORA ORINGHER COUNSELORS AT LAW

THEODORA TO ORINGHER COUNSELORS AT LAW

# I. SUMMARY OF REPLY

The pending coverage dispute between these insurance giants has left a trail of unpaid invoices and costs exceeding $7 million owed to the proposed Intervenor, Southern California law firm Theodora Oringher PC ("Theodora" or the "Firm"), and countless vendors that worked tirelessly to represent the insurers' interests in defending the underlying personal injury case against Angels Baseball. The very essence of Plaintiff ACE American Insurance Company's ("ACE") action is to adjudicate the responsibility between itself and defendant Arch Insurance Company ("Arch") for the Firm's fees and costs in defending the personal injury case. (ECF 1, Prayer ¶¶ 1-4; *see also* Arch Answer & Counterclaim, ECF 18 at 13-14.) Arch put it succinctly: "the parties agree that at least one of the two insurers had a duty to defend throughout the underlying action," and the only issue is which insurer had the primary duty and how defense expenses are to be allocated. (Arch Opp. at 1, ECF 16.)

The Firm's unpaid fees and costs are more than sufficient to give it a seat in this case. They absolutely present a common question of law or fact between the movant's claim and the main action, allowing permissive intervention under Rule 24(b). They are also a basis for intervention as of right under Rule 24(a)(2). They are a significantly protectable interest relating to the subject of the action. Disposition of the action may as a practical matter impair or impede that interest. And the Firm's interests are not adequately protected by the existing parties.

Proof positive of these grounds is the blatant factual misrepresentation to the Court by ACE. "ACE paid the Angels' defense costs for the California Lawsuit and Texas Complaint through the entry of the August 2025 Order." (ACE Opp. at 11.) This is a bald face misrepresentation. The true fact is that ACE did not even review let alone pay approximately $1.8 million of invoices for work performed by the Firm through August 2025. During the case, ACE also formally represented to the Firm that it would continue to provide a defense through the date of October 30,

2025. (Declaration of Kevin A. Dorse ("Dorse Decl.") Ex. 5.) "Chubb [ACE] hereby withdraws its defense of the Angels effective October 30, 2025." (*Id.*) Yet, ACE also failed to review let alone pay approximately $3 million in invoices for the Firm's work performed in September and October 2025, including work while the Firm was actively engaged in the underlying trial.

There is no party with more knowledge or greater interest than the Firm in assuring that the Court has the correct and full and complete facts about the amount of fees and costs that were – and were not – paid to the Firm.

The stakes are concrete. More than $7 million in defense fees and costs remains unpaid. ACE withdrew from the defense mid-trial and refuses to pay any outstanding invoices; Arch refuses to pay anything incurred before October 30, 2025. Both Carriers cite this very coverage dispute as their reason for refusing section 2860(c) arbitration. (Mem. at 5, ECF 13-1.)

The Firm respectfully requests that the Court grant permissive intervention under Rule 24(b), subject to the four limiting conditions set out in Part III.E below, or, in the alternative, grant intervention as of right under Rule 24(a)(2). Should the Court deny the Motion, the denial should be expressly without prejudice, and the order should record Arch's agreement to arbitrate under section 2860(c) following allocation.

## II. STATEMENT OF ADDITIONAL FACTS

### A. ACE and Its Counsel Know ACE Did Not and Has Not "Paid the Angels' Defense Costs . . . Through the Entry of the August 2025 Order"

ACE has no factual basis for its statement to the Court that it "paid the Angels' defense costs for the California Lawsuit and Texas Complaint through the entry of the August 2025 Order" (ACE Opp. at 11). Obviously ACE has access to its own records showing the number and dates of the invoices it has not paid and, in many instances, has not reviewed. Further, the Firm has repeatedly provided ACE



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

clear summaries of the outstanding invoices that ACE has refused to pay. (Dorse Decl., Exs. 2, 3, 4 & 6.) For instance, on October 16, 2025, the Firm provided a chart listing invoices from August 2024 through September 2025 that represented $2,399,454 in ***unreviewed*** fees and costs. (*Id.*, Ex. 2.) The court issued its tentative ruling on the competing motions for summary adjudication on August 27, 2025, and entered the order on August 28, 2025; thus, these unreviewed invoices included services performed before the court's order. (*Id.* ¶ 5.)

When ACE issued the review and reductions of the outstanding August 2024 invoice, the Firm wrote again on October 24, 2025 seeking "immediate payment of all of our outstanding invoices." (*Id.*, Ex. 3.) On November 3, 2025, the Firm again emailed ACE, its counsel, and other insurers, listing by date the more than $3 million in unpaid invoices between November 2024 and October 23, 2025. (*Id.*, Ex. 4.)

ACE's counsel of record in the present action is also aware that ACE has not "paid . . . the defense costs . . . through the entry of the August 2025 Order." On October 26, 2026, following the telephonic meet and confer with ACE's counsel, the Firm provided a summary of the unpaid amounts broken out into three categories—fees attributable to the rate disagreement, amounts reduced by ACE for other reasons, and fees in unreviewed, unpaid invoices—along with the list of unreviewed and partially paid invoices dating back to November 2024. (*Id.*, Ex. 6.) The summary chart sent to ACE's counsel is excerpted below:

| | Rate Difference | Remaining Unpaid Amount After Rate Difference Subtracted (unreviewed invoices only) | Amount Reduced (Not due to rate, reviewed invoices only) | Total by Unreviewed/Reviewed Invoices: |
|---|---|---|---|---|
| **Unreviewed Invoices** | $430,139.10 | $4,813,182.09 | -- | **$5,243,321.19** |
| **Reviewed Invoices** | $297,471.60 | -- | $1,741,554.48 | **$2,039,026.08** |
| Total by bucket: | ***$727,610.70*** | ***$4,813,182.09*** | ***$1,741,554.48*** | *All outstanding amounts: $7,282,347.27* |

THEODORA ORINGHER COUNSELORS AT LAW

(*Id.*, Ex. 6.)

| | Stmn Date | Stmn No. | Month of Svc | Fees | Costs | Total | Due from Ins | | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 10 | 11/27/24 | 122809 | Oct 2024 | 487,575.00 | 49,554.10 | 537,129.10 | 323,824.00 | | Not reviewed by Chubb |
| 19 | 08/13/25 | 126028 | Jun 2025 | 644,675.00 | 100,347.75 | 745,022.75 | 471,925.85 | | Not reviewed by Chubb |
| 21 | 10/17/25 | 127202 | Aug 2025 | 1,429,565.00 | 206,138.02 | 1,635,703.02 | 997,657.52 | | Not reviewed by Chubb |
| 22 | 11/04/25 | 127530 | Sep 2025 | 2,768,400.00 | 216,413.43 | 2,984,813.43 | 1,770,345.63 | | Not reviewed by Chubb |
| 23 | 11/21/25 | 128011 | Oct 2025 | 2,333,995.00 | 156,370.66 | 2,490,365.66 | 1,371,630.77 | * | Not reviewed by Chubb |
| 24 | 12/26/25 | 128455 | Nov 2025 | 1,756,590.00 | 190,422.78 | 1,947,012.78 | 53,701.91 | * | Not reviewed by Chubb |
| 25 | 01/09/26 | 128508 | Dec 2025 | 1,191,020.00 | 211,216.44 | 1,402,236.44 | 1,153.04 | * | Not reviewed by Chubb |
| 26 | 01/23/26 | 128695 | Costs Only | - | 488,858.31 | 488,858.31 | 247,140.00 | * | Not reviewed by Chubb |
| 27 | 02/26/26 | 129223 | Costs Only | - | 5,129.97 | 5,129.97 | 5,129.97 | * | Not reviewed by Chubb |
| 28 | 04/29/26 | 130437 | Mar 2026 | 1,980.00 | 31,201.50 | 33,181.50 | 812.50 | * | Not reviewed by Chubb |
| | Total | | | | | $ | 5,243,321.19 | | |

(*Id.*)

ACE's misstatement about its failure to pay millions of dollars in fees it now seeks to have Arch reimburse demonstrates the need for the Firm's intervention.

## III. ARGUMENT

### A. The Court Should Grant Permissive Intervention Under Rule 24(b)

This Court has granted motions to intervene based on permissive grounds under Rule 24(b) without reaching Rule 24(a). *See Ford Gum & Mach. Co. v. Smackin' Snacks LLC*, No. CV 25-01529-MWF (SKx), 2025 WL 2019827, at *1 (C.D. Cal. June 3, 2025); *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Morrow-Meadows Corp.*, No. CV16-7454-MWF (ASx), 2017 WL 11631998, at *2 (C.D. Cal. Aug. 1, 2017); *O'Connell v. Smith*, No. CV-13-01905-MWF (PJWx), 2014 WL 12773900, at *1 (C.D. Cal. Aug. 18, 2014); *Standard Fabrics Int'l, Inc. v. Rainbow USA, Inc.*, No. CV15-8218-MWF (KSx), 2016 WL 11760192, at *2 (C.D. Cal. Feb. 5, 2016). In *Construction Laborers*, the Court addressed permissive intervention first because it "is easier to meet." 2017 WL 11631998, at *2. The same approach is warranted here.

#### 1. The Governing Standard

Permissive intervention requires (1) an independent ground for jurisdiction, (2) a timely motion, and (3) a common question of law or fact between the movant's claim and the main action. *Ford Gum*, 2025 WL 2019827, at *2; *Beckman Indus.*,

*Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996). Once those elements are met, intervention lies within the Court's discretion, informed by whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The existence of a 'common question' is liberally construed." *Constr. Laborers*, 2017 WL 11631998, at *2 (quoting *Bureerong*, 167 F.R.D. at 85); *accord O'Connell*, 2014 WL 12773900, at *2; *Standard Fabrics*, 2016 WL 11760192, at *2.

**2. <u>The Motion Is Timely</u>**

ACE concedes timeliness (ACE Opp. at 6, ECF 15), and Arch does not contest it. The Firm moved roughly three months after the complaint was filed, before any answer, scheduling order, or discovery; Arch did not file its answer and counterclaim until November 18, 2026. (Arch Opp. at 4, ECF 16.) This Court has found motions timely in comparable and even later postures, emphasizing that prejudice is "[t]he most important consideration." *Ford Gum*, 2025 WL 2019827, at *3 (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1916 (3d ed.)) (motion filed about two months into the case, before defendants appeared); *Standard Fabrics*, 2016 WL 11760192, at *2 (2.5 months in, during early discovery); *Constr. Laborers*, 2017 WL 11631998, at *3 (timely even after a scheduling-order deadline, because timeliness is "flexible," (quoting *Pollara v. Radiant Logistics Inc.*, 2012 WL 12887097, at *3 (C.D. Cal. Nov. 1, 2012)), and a scheduling order "is not the end-all-and-be-all"). The Firm also acted promptly to avoid motion practice, seeking a stipulation on October 16, 2026 and meeting and conferring on October 23 and 26, 2026. (Mem. at 9.) *See Constr. Laborers*, 2017 WL 11631998, at *3–4 (crediting early stipulation request).

/ / /

/ / /



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

### 3. <u>Independent Jurisdiction Exists Based on Diversity</u>

The independent-jurisdiction requirement exists principally in diversity cases, to prevent intervenors from using Rule 24 to destroy complete diversity. *Geithner*, 644 F.3d at 843. That concern is absent here. The Firm is a California professional corporation with its principal place of business in Los Angeles. (ECF 14.) ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania, and Arch is a Missouri corporation with its main administrative office in New Jersey. (Proposed Compl. in Intervention ¶¶ 6–7, ECF 13-2.) The amount in controversy exceeds $7 million. (Mem. at 1.) ACE's contention that the Firm's lack of "policy standing" defeats jurisdiction (ACE Opp. at 24, ECF 15) confuses the merits of the Firm's claims with the Court's subject-matter jurisdiction to hear them.

### 4. <u>The Firm's Claims Share Common Questions of Law and Fact With the Main Action</u>

The shared question is plain: which insurer owed a defense, for which periods, and whether ACE's withdrawal effective October 30, 2025 was proper. (Proposed Compl. in Intervention ¶¶ 61–64, 78–98.) That question is the core of ACE's claims and Arch's counterclaim, and it is the predicate for the Firm's claims. Arch itself supplies the common question: it concedes that at least one insurer owed a defense throughout, that the only issue is which insurer and how expenses are allocated, and that allocation "would determine the appropriate insurer parties for the arbitration" and the allocation of any award. (Arch Opp. at 1–3, 12, ECF 16.) The Firm's payment and arbitration rights turn on that same determination.

The Carriers' effort to cast the Firm as a mere outsider—ACE's "once removed" and "stranger to the policies" theme (ACE Opp. at 17–18) and Arch's assertion that section 2860 "divides the territory cleanly" (Arch Opp. at 9)—is precisely the framing this Court rejected in *Construction Laborers*. There, the plaintiff characterized the intervenors as mere competing creditors under separate agreements; the Court called that "an overly simplistic view" that "ignore[s] the

practical realities," and found common facts (the work performed and contribution amounts) and common law (ERISA governed all contributions). 2017 WL 11631998, at *4. So too here: section 2860 governs both Carriers' obligation to pay Cumis counsel, and the duty-to-defend periods are common facts. The Ninth Circuit likewise found commonality where the district court decided "a question that was common with, and indeed central to," a fee claimant's claim. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989) (holding trial court abused its discretion in denying permissive intervention by attorney under contingent fee agreement "because it chose to address the merits of his contingency fee agreement."), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990).

Arch's contention that the statutory scheme separates these issues "by design" (Arch Opp. at 9, ECF 16) has it backwards. California law provides that "the presence of other non-arbitrable issues in an action does not preclude arbitration of Cumis fee issues," so long as the court resolves the duty to defend first. *Compulink Mgmt. Ctr., Inc. v. St. Paul Fire & Marine Ins. Co.*, 169 Cal. App. 4th 289, 300 (2008). The scheme assigns the gateway question to the court and the amounts to the arbitrator.[1] The Firm asks this Court to decide only the gateway question.

Finally, a direct pecuniary interest is more than sufficient under Rule 24(b). In *Ford Gum*, this Court held that the movant's "direct pecuniary interest in the resolution of the matter . . . is beyond the level of commonality required under Rule 24." 2025 WL 2019827, at *3 (citing *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940); 7C Wright & Miller § 1911 ("Permissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit.")); *see also Standard Fabrics*, 2016 WL 11760192, at *2 (designer and supplier of accused garments shared common defenses). ACE's reliance on *Clear*

[1] And indeed, the statutory scheme applies only to California *state* courts: "Federal actions involving *Cumis* fee issues, on the other hand, are not subject to section's [sic] 2860's arbitration procedure." *Compulink*, 169 Cal. App. 4th at 298.



THEODORA ORINGHER COUNSELORS AT LAW

*Blue* and *Greene* for the proposition that an "economic stake" is insufficient addresses Rule 24(a)'s protectable-interest element, not Rule 24(b). (ACE Opp. at 16–18 (citing *Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*, No. 5:21-CV-08764-EJD, 2023 WL 7284162, at *5 (N.D. Cal. Nov. 3, 2023) and *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).) Indeed, the court in *Clear Blue* found permissive intervention by a law firm asserting a charging lien in a coverage action between its former client and the client's insurer appropriate. 2023 WL 7284162, at *6-7.

**5. <u>The Court Need Not Resolve the Carriers' Contested Rule 24(a) Questions</u>**

In *Ford Gum*, the Court declined to reach Rule 24(a) because doing so "would require the Court to cursorily rule on issues that are the subject of a parallel action," and granted permissive intervention instead. 2025 WL 2019827, at *2. The same course is appropriate here. ACE's policy-standing argument, its reliance on *Moseley* (addressed in Part III.B.4 below), and its "once removed" theme all target Rule 24(a). The Court can grant permissive intervention without resolving any of them.

**6. <u>Intervention Will Not Cause Undue Delay or Prejudice</u>**

The Carriers' prejudice arguments rest on a mischaracterization of what the Firm seeks. Arch warns that staffing, invoices, line-item reductions, and the $380 hourly rate would expand discovery (Arch Opp. at 10–11); ACE predicts privilege disputes over the 13-attorney trial team (ACE Opp. at 25–26). But the Firm does not ask this Court to decide reasonableness, rates, or staffing. Under section 2860(c), those questions belong to the arbitrator, *Janopaul + Block Cos. v. Superior Ct.*, 200 Cal. App. 4th 1239, 1250–51 (2011), and the Proposed Complaint does not seek to litigate them here. (Proposed Compl. in Intervention ¶¶ 78-98, ECF 13-2.) With those questions reserved for arbitration and the limited-scope conditions described in Part III.E, the feared discovery falls away. For the same reason, ACE's Exhibit



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

7—the September 9, 2025 letter regarding the trial team—goes only to reasonableness and is irrelevant to the gateway question.

Nor will intervention cause delay. This case remains at the pleadings stage: Arch's answer and counterclaim was filed on November 18, 2026, and no trial date has been set. (Arch Opp. at 1, 4, ECF 16.) *See Ford Gum*, 2025 WL 2019827, at *2–3; *Standard Fabrics*, 2016 WL 11760192, at *2. To the contrary, intervention promotes efficiency. Resolving related issues in a single proceeding avoids "endless, circular, and unnecessary litigation." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). This Court has credited avoided third-party discovery and the benefit of "full adjudication on the merits." *Standard Fabrics*, 2016 WL 11760192, at *2–3. Without intervention, a second proceeding would relitigate the same defense periods.

The Carriers' remaining grievances—about pre-suit fee disputes, staffing, and the Firm's conduct—are beside the point. "[T]he focus is on any undue delay or prejudice to the parties in this action if intervention is permitted." *Standard Fabrics*, 2016 WL 11760192, at *3. Those grievances belong in the arbitration. And Arch's request that the Court deny the motion now and entertain renewal after allocation (Arch Opp. at 12) would itself produce delay; this Court has refused to postpone ruling where deferral would likely result in delay. *Constr. Laborers*, 2017 WL 11631998, at *3; *see Ford Gum*, 2025 WL 2019827, at *3–4. Indeed, as *Ford Gum* recognized, "there exists the potential for prejudice if the Proposed Intervenor is not permitted to intervene." 2025 WL 2019827, at *3. Exclusion would leave the Firm with no forum for more than $7 million while both Carriers condition arbitration on the outcome of this case. (Proposed Compl. in Intervention ¶¶ 23, 75–77, ECF 13-2.) Any such concern is readily managed, as in *Construction Laborers*, where the Court granted intervention anyway despite similar concerns. 2017 WL 11631998, at *2–4.

/ / /

THEODORA ORINGHER COUNSELORS AT LAW

#### 7. The Discretionary Factors Favor Intervention

Courts may also consider the nature of the intervenor's interest, the adequacy of existing representation, and whether the intervenor will "significantly contribute to full development of the underlying factual issues." *United States v. Idaho*, 342 F.R.D. 144, 151 (D. Idaho 2022) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Each factor favors the Firm. The Firm has first-hand knowledge of the tender, reservations of rights, approvals, and payments that bear on the scope and timing of each Carrier's duty to defend (Mem. at 14)—knowledge that "may support" permissive intervention. *Prete v. Bradbury*, 438 F.3d 949, 958 n.13 (9th Cir. 2006).

### B. Additionally, the Firm Is Entitled to Intervene as of Right Under Rule 24(a)(2)

While the Court need not resolve whether the Firm is entitled to intervene as of right, the Firm also meets the standard under Rule 24(a)(2).

#### 1. The Governing Standard

An applicant may intervene as of right upon a showing of (1) timeliness, (2) a significantly protectable interest relating to the subject of the action, (3) that disposition of the action may as a practical matter impair or impede that interest, and (4) inadequate representation by existing parties. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). These requirements are construed "broadly in favor of proposed intervenors" and guided by "practical and equitable considerations." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)) (internal quotation marks omitted). A liberal policy "serves both efficient resolution of issues and broadened access to the courts." *Id.* Timeliness is established for the reasons stated in Part III.A.2.

/ / /

/ / /

THEODORA ORINGHER COUNSELORS AT LAW

### 2. **The Firm Has a Significantly Protectable Interest**

An interest is significantly protectable if it is "protectable under some law" and bears "a relationship between the legally protected interest and the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (quoting *Wilderness Soc'y*, 630 F.3d at 1179). The interest need not be protected by the statute under which the suit is brought, *Wilderness Soc'y*, 630 F.3d at 1179, and no specific legal or equitable interest is required, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene*, 996 F.2d at 976).

The Firm's interest is legally protected, not "once removed." Section 2860(c) governs "[t]he insurer's obligation to pay fees to the independent counsel" and requires binding arbitration of "[a]ny dispute concerning attorney's fees." Cal. Civ. Code § 2860(c). The California Supreme Court has held that section 2860 "limits neither the potential 'parties to the dispute' . . . nor the billing issues that may be raised," and that because "counsel are billing the insurer, and the insurer is sending its checks to counsel, such a dispute may well arise directly between the insurer and counsel." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1002 (2015). That holding answers ACE's "stranger to the policies" theme.

The Firm's interest is also contractual. ACE wrote that it "agrees to Angels LP's appointment of TO" and "continues to respectfully agree to pay the following rates" under section 2860(c). (Proposed Compl. in Intervention ¶ 49, ECF 13-2.) Arch, for its part, agreed to "participate in [Insured's] defense through Theodora Oringher firm at these rates on a going forward basis." (*Id.* ¶ 67.) Contract rights are "traditionally protectable interests," and even a third-party-beneficiary interest suffices. *Berg*, 268 F.3d at 820.

ACE's "economic stake" cases do not alter this conclusion. *Greene* does state that an economic stake, "even if significant, is not enough." 996 F.2d at 976. But the Ninth Circuit has since clarified that "a non-speculative, economic interest may be

THEODORA ORINGHER COUNSELORS AT LAW

sufficient" where it is "concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–20 (9th Cir. 2004). *Alisal* rejected a creditor whose interest "in the prospective collectability of a debt" was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation." *Id.* at 920. Here, the subject of the action is the defense expenses for this insured in this underlying case—and the Firm's invoices *are* those expenses. Likewise, *Southwest Center* distinguishes interests "based upon a bare expectation" in the absence of "any existing legal right, contract or permits" from already-existing contract rights. 268 F.3d at 819 (discussing *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993)). The Firm holds existing Cumis counsel approvals and a statutory payment right.

The relationship requirement is satisfied because "resolution of the plaintiff's claims actually will affect the applicant." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)). ACE's own complaint alleges that it "had no duty to defend," that Arch is "solely and fully responsible" for fees sought by third parties, and that ACE "has also received inquiries and demands from third parties because ARCH has failed to pay attorney's fees and costs." (ECF 1 ¶¶ 26, 36, 37, 53.) Similarly, Arch alleges in its counterclaim:

> However, despite agreeing to defend the Angels through October 30, 2025, Arch is informed, believes, and therefore alleges that ACE has failed and refused to pay – or even audit – several invoices totaling over $4,000,000 for the defense of the Angels that are for fees and costs incurred before October 30, 2025. Consequently, Arch has been contacted by third parties seeking payment of sums for which ACE expressly agreed to provide payment on behalf of the Angels, either as a matter of its contractual duty to defend or as a volunteer.

(Arch Answer & Counterclaim ¶ 33, ECF 18.) The Firm is the third party referenced

by both ACE and Arch. And Arch confirms that allocation "would determine the appropriate insurer parties for the arbitration." (Arch Opp. at 12, ECF 16.) This case is nothing like *Donnelly*, 159 F.3d at 409, on which ACE relies, where the Ninth Circuit found the proposed intervenors' "claims of discrimination against male employees are unrelated to plaintiffs' particular claims of 'hostile-work-environment' discrimination against female employees." The Ninth Circuit later explained that in *Donnelly*, the fate of the female plaintiffs' claims "wouldn't affect the men's claims at all"—the men being the proposed intervenors—in contrast to a case that "will determine conclusively" the intervenors' protection. *Lockyer*, 450 F.3d at 441–42.

### 3. <u>The Firm Has Article III Standing</u>

An intervenor of right must demonstrate Article III standing "to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017); *see Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1172–73 (9th Cir. 2024). The Firm accepts that the rule applies because it seeks a separate arbitration order and declarations framed around its own payment rights. The Firm readily satisfies it. *Injury*: more than $7 million remains unpaid. (Mem. at 5.) *Traceability*: both Carriers refuse to pay and refuse to arbitrate "based on the coverage dispute between ACE and ARCH presented by the present action" (Proposed Compl. in Intervention at 6, ECF 13-2), and Arch's position that arbitration is "premature" and that the Carriers' dispute must be resolved before mediation with the Firm likewise conditions any resolution on this case. *Redressability*: an order fixing the defense periods and compelling arbitration would redress the Carriers' refusal.

ACE's reliance on the rule that "a third party claimant may not bring a direct action against an insurance company on the contract" (ACE Opp. at 20, ECF 15) does not change the analysis. That is a state-law rule governing tort claimants, not an Article III limitation. It also ignores the Firm's statutory position: a section 2860



THEODORA ORINGHER COUNSELORS AT LAW

fee dispute "may well arise directly between the insurer and counsel." *J.R. Mktg.*, 61 Cal. 4th at 1002–03.

**4. <u>ACE's Authorities Are Inapposite</u>**

*Moseley v. Grange Mutual Casualty Co.*, No. 3:03CV-21-S, 2012 WL 2376067 (W.D. Ky. June 22, 2012), on which ACE principally relies, held that Rule 24 does not "contemplate[] the intervention of an attorney to protect the source of payment of his fee." But there the firm's "legal interest [was] against [the insured] for payment of its fees," and it had "no connection" to the coverage action brought by the insured against its insurance carrier. *Id.* at *2-5 (alleging "the attorneys' fees that [the insured] seeks to recover are owed to it for work in defending [the insured].") As the Western District of Kentucky noted: "none of the cases cited by [the insurance carrier] involve attorneys seeking to intervene to pursue a source of payment for attorneys' fees." *Id.* at *2. Here, section 2860(c) and ACE's written Cumis approval give the Firm a direct right against the Carriers themselves. ACE's tort-claimant cases—*Royal Indemnity Co. v. United Enterprises, Inc.*, 162 Cal. App. 4th 194, 203–12 (2008), *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216, 220–25 (3d Cir. 2005) and *Mt. Hawley Insurance Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311–12 (11th Cir. 2005) (ACE Opp. at 19)—involve claimants holding only a contingent future judgment, an interest courts have described as "purely speculative because it is contingent upon [the claimant] prevailing." *Mt. Hawley*, 425 F.3d at 1311 (affirming denial of a wrongful death claimant's motion to intervene in coverage action between insurance carrier and insured owner and manager of drowning site). The Firm's claim, by contrast, is for work already performed under an accepted appointment.

*Travelers Indemnity Co. of Connecticut v. Newlin*, 498 F. Supp. 3d 1262, 1279 (S.D. Cal. 2020), held only that equitable subrogation and contribution belong to insurers, noting that the law firm there was "not an insurer and ha[d] also not paid out any monies." The Firm asserts neither doctrine. And unlike in *Newlin*, the Firm

has paid out monies on the defense, including to vendors. (Dorse Decl., ¶ 10.) Finally, in *XL Specialty v. Perry*, No. CV 11-02078-RGK (JCGx), 2011 WL 9700995, at *4 (C.D. Cal. Nov. 30, 2011) and *Washington v. FDA*, 670 F. Supp. 3d 1150, 1154 (E.D. Wash. 2023), the intervenors' claims turned on entirely distinct legal issues. *XL Specialty,* 2011 WL 9700995, at *4 (intervenor alleged breaches of corporate fiduciary duties by the insured in underlying action that had no relationship with the coverage dispute); *Washington*, 670 F. Supp. 3d at 1154-55 (intervenor states asserting different violations of the Administrative Procedure Act by the FDA than those asserted by plaintiff states had no common questions of law or fact). Here, the duty-to-defend periods are the very question that controls not only the Firm's payment, but which Carrier or Carriers must participate in arbitration to resolve the question of payment.

Other courts confirm that fee interests support intervention. The Fifth Circuit has "consistently held that an attorney's contingent fee is a sufficient 'interest'" for intervention, and has found impairment where the firm would otherwise have to bring a separate suit. *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 866–68 (5th Cir. 2019). The Ninth Circuit reversed a denial of permissive intervention to a fee claimant in *Venegas*, 867 F.2d at 530–31, though it did not decide whether attorneys may intervene as of right, *id.*; *cf. Stockton v. United States*, 493 F.2d 1021, 1022–24 (9th Cir. 1974) (reversing order permitting attorney to intervene to claim fees on the facts presented, while reserving the general question). The Firm acknowledges contrary out-of-circuit authority characterizing unpaid-fee interests as "mere economic interests," *Luster v. Puracap Lab'ys, LLC*, No. CV 18-503-MN-JLH, 2023 WL 157638, at *3 (D. Del. Jan. 11, 2023); *see also Newman v. Mut. Life Ins. Co. of N.Y.*, 206 F.R.D. 410, 411–12 (D. Md. 2002), but in those cases the fees were owed by the client and the firms had ordinary contract remedies. Here, the Carriers owe the fees by statute, and the Firm's only remedy—section 2860(c) arbitration—is blocked pending this action.



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

### C. <u>Disposition of This Action Will Practically Impair the Firm's Ability to Protect Its Interest</u>

#### 1. <u>The Standard Is Practical Impairment, Not Preclusion</u>

Since the 1966 amendments, an intervenor "no longer must show [that] his interest would be prejudiced by the res judicata effect"; "[i]t is enough that his interest is practically impaired." *Stockton*, 493 F.2d at 1023. Stare decisis alone "may supply the requisite practical impairment." *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981). And under the advisory committee note to Rule 24, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). ACE's preclusion argument (ACE Opp. at 21) therefore misses the mark.

#### 2. <u>The Allocation Ruling Will Decide Whom the Firm Can Collect From</u>

Arch agreed to defend only from October 30, 2025, and pays nothing before that date. (Proposed Compl. in Intervention at 17–18, ECF 13-2.) It has counterclaimed that it is excess for any period it owed a defense. (Arch Opp. at 7, ECF 16; *see generally* Arch Answer & Counterclaim, ECF 18.) ACE contends it never owed a defense under its employers' liability coverage (ACE Opp. at 13, ECF 15) and that it may recoup costs it "never owed" (*id.* at 11). The pre-October 30 period includes more than $5 million in invoices ACE never reviewed and $2.6 million submitted mid-trial. (Proposed Compl. in Intervention at 14–15; Dorse Decl. Exs. 2-4, 6; Arch Answer & Counterclaim ¶ 33, ECF 18.) A finding that ACE never owed a defense, combined with a finding that Arch owed one only from October 30, would allow each Carrier to deny those invoices. That is impairment in a concrete, dollar sense.

/ / /

Arch's concessions also defeat ACE's contention that this action "does not adjudicate the rights of Theodora or any third-party." (ACE Opp. at 6–7, 21, ECF 15.) Arch concedes that at least one insurer owed a defense throughout (Arch Opp. at 1–3, ECF 16), so the only open question is who pays for each period—which is the Firm's fee claim that must be arbitrated. Arch further admits that allocation is the "threshold question" that "would determine the appropriate insurer parties for the arbitration" (*id.* at 12), and suggests that an order compelling arbitration may never be needed (*id.* n.3). ACE's own authorities make that ruling the prerequisite to section 2860 arbitration. (ACE Opp. at 21–22.) Together, these positions confirm that the ruling controls whether, and against whom, the Firm can enforce its statutory remedy—practical impairment without preclusion.

### 3. **The Carriers' Prematurity Cases Support Intervention**

When the duty to defend is contested, it "must be resolved by the trial court in the first instance" before section 2860 arbitration. *Handy v. First Interstate Bank*, 13 Cal. App. 4th 917, 924–25 (1993). Apportionment between two carriers requires "a determination of the insurers' actual duties of defense," which "must be conclusively established in a judicial proceeding" before arbitration. *Id.* Arbitration is postponed "until the threshold questions of duty to defend, breach and bad faith are resolved in the trial court." *Janopaul*, 200 Cal. App. 4th at 1250. If this Court's ruling is the mandatory gateway to the Firm's statutory remedy, the Firm is "so situated" that disposition of this action will impair its ability to protect that remedy. Fed. R. Civ. P. 24(a)(2). Prematurity goes to the timing of arbitration, not to whether the Firm may be heard on the gateway issue. Moreover, *Janopaul* and *Intergulf Development LLC v. Superior Court*, 183 Cal. App. 4th 16, 21–22 (2010), were insured-versus-insurer bad-faith cases in which arbitration was sought before the threshold issues were decided, as ACE concedes. (ACE Opp. at 22.)

/ / /

/ / /



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA TO ORINGHER COUNSELORS AT LAW

### 4. The Firm Has No Adequate Alternative Forum

Applicants with "no alternative forum" are impaired. *Lockyer*, 450 F.3d at 442–43. A *Cumis* fee dispute cannot be litigated as an ordinary lawsuit in California state court: the insurer's refusal to arbitrate "does not confer jurisdiction on the courts," and the remedy is a petition to compel. *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1474 (2008). Both ACE and Arch have conditioned any arbitration or mediation with the Firm on resolution of the present action. (Proposed Compl. in Intervention at 6, ECF 13-2; Mem. at 5, ECF 13-1; Arch Opp. at 4, 12, ECF 16.) Arch's footnote 3 confirms the point: it says an order compelling arbitration "may also not be necessary" because ACE "may later agree to arbitrate if it is found to have a primary duty to defend." (Arch Opp. at 15 n.3, ECF 16.) ACE's participation in arbitration thus depends on the outcome of this case. The only forum that can unlock the Firm's remedy is this one.

## D. The Carriers Do Not Adequately Represent the Firm's Interests

### 1. The Burden Is Minimal

The applicant's burden is "minimal"; it need only show that representation "may be" inadequate. *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). Courts consider whether a present party will "undoubtedly make all" of the intervenor's arguments, whether it is capable and willing to do so, and whether the intervenor "would offer any necessary elements" the parties would neglect. *Id.*

### 2. ACE's Misstatements Demonstrate That It Cannot Represent the Firm

ACE's opposition makes its adversity to the Firm unmistakable. First, ACE represents that it "paid the Angels' defense costs for the California Lawsuit and Texas Complaint through the entry of the August 2025 Order." (ACE Opp. at 11, ECF 15.) That is incorrect, and ACE and its counsel were repeatedly advised of the unpaid invoices. (Dorse Decl., Exs. 2-4, 6.) ACE knew that it had not reviewed or

made payment on invoices dating back to **November 2024** prior to its November 14, 2025 email purporting to withdraw from Angels Baseball's defense, and is aware that invoices for services between November 2024 and August 2025 remain unreviewed and unpaid. (*Id.*, Exs. 2-4, 6.) The Firm provided ACE's counsel in this action—who signed the Opposition—with a summary of the unpaid invoices in October 2026. (*Id.*, Ex. 6.) Second, ACE asserts that the Firm "requested that ACE agree to pay for 13 full-time attorneys and one paralegal to attend trial" and never provided "an adequate explanation." (ACE Opp. at 11.) That mischaracterizes the request, and the Firm did provide further explanation. (Dorse Decl., Ex. 1.) Third, ACE contends that "the Angels retained Theodora . . . not ACE." (ACE Opp. at 11.) But under section 2860, the insured selects independent counsel and the insurer pays, *see* Cal. Civ. Code § 2860(c), and ACE itself approved the Firm as Cumis counsel. A party that disputes the very existence of its payment obligation cannot represent the Firm's interest in being paid.

**3. <u>No Presumption of Adequacy Applies, and Any Presumption Is Rebutted</u>**

The presumption of adequacy arises only when the applicant and a party share the "same ultimate objective." *Arakaki*, 324 F.3d at 1086. There is no shared objective here. Each Carrier's ultimate objective is to pay as little as possible; the Firm's is to be paid in full for the entire defense. "[W]hen a party possesses interests adverse to those of a prospective intervenor, that party cannot adequately represent the intervenor's interests." *United States v. Stringfellow*, 783 F.2d 821, 827–28 (9th Cir. 1986) (noting that parties to a two-sided dispute may be "reluctant to advance an argument" that cuts against themselves and may "bargain away" the absent party's interests), *vacated*, 480 U.S. 370 (1987). The Supreme Court has further noted that a presumption of adequacy applies, if at all, only when interests "overla[p] fully," and that interests "similar to, but not identical with," those of a party normally do not trigger it. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S.



THEODORA ORINGHER COUNSELORS AT LAW

THEODORA ORINGHER COUNSELORS AT LAW

179, 197 (2022) (quoting 7C Wright & Miller § 1909). The Ninth Circuit has recognized that *Berger* "calls into question" the same-ultimate-objective presumption. *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (offering no opinion on whether the presumption remains good law).

Even if a presumption applied, it is rebutted. Arch claims each insurer will argue the other "owed a complete duty to defend." (Arch Opp. at 11.) But neither Carrier will advance the Firm's position. ACE will argue that Arch owed the defense from the outset; it will not argue that ACE itself owed a defense. Arch will argue that ACE owed the defense, but also that Arch is excess or responsible only for an allocated share. (*Id.* at 6.) No party will argue that both Carriers owed concurrent primary defenses from tender, or that ACE, having never sought declaratory relief, could not abruptly withdraw mid-trial. The Firm pleads both. (Proposed Compl. in Intervention ¶ 64 (citing *Haskel, Inc. v. Superior Ct.*, 33 Cal. App. 4th 963, 976–78 (1995).) Positions that "go to the heart" of the case are "far more than differences in litigation strategy." *Lockyer*, 450 F.3d at 444. Nor must the Firm "anticipate specific differences in trial strategy"; it is enough that, "because of the difference in interests, it is likely that Defendants will not advance the same arguments." *Sw. Ctr.*, 268 F.3d at 824.

The Firm also brings a distinct contribution. Responding to ACE's point about deposing a testifying officer (ACE Opp. at 23), the Firm has first-hand knowledge of when each Carrier accepted, reserved, approved, and paid, and of what the underlying plaintiffs were litigating at trial—facts that bear directly on the scope and timing of each duty to defend. *Cf. Prete*, 438 F.3d at 958 n.13 (such knowledge may support permissive intervention, although it is not sufficient by itself to support intervention as of right). ACE's reliance on cases treating strategy-only disagreements as insufficient, *see League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997); *Callahan*, 42 F.4th at 1021, is

misplaced. The disagreement here is substantive—who pays, and for what period—not tactical.

### E. The Court Should Grant Limited-Scope Intervention on the Firm's Proposed Conditions

The Court's Rule 24(b) discretion "includes discretion to limit intervention to particular issues," *Idaho*, 342 F.R.D. at 151 (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974)), and this Court has approved intervention for a defined purpose, *O'Connell*, 2014 WL 12773900, at *3. To eliminate any concern about scope or delay, the Firm proposes these conditions: (1) its participation will be limited to the existence, scope, and timing of each Carrier's duty to defend, including ACE's October 30, 2025 withdrawal; (2) it will not seek discovery into fee reasonableness, rates, or staffing; (3) its arbitration claim (Count 3) will be stayed pending the Court's allocation ruling; and (4) it will coordinate briefing with the parties and will not pursue duplicative discovery.

Arch's own concessions support this approach. Arch "agrees with Theodora that ACE, Arch, and Theodora should arbitrate" under section 2860. (Arch Opp. at 4, ECF 16.) Arch asks only that the motion be denied "without prejudice to renew after the allocation dispute is resolved." (*Id.* at 12.) But granting limited intervention now—with Count 3 stayed—is far more efficient than serial motions later. Arch's assertion that it never refused arbitration and instead proposed mediation first (*id.* at 4) does not change the analysis: even on Arch's account, it conditioned arbitration on the outcome of this case, and conditioned mediation with the Firm on a resolution between the Carriers. Should the Court nonetheless decline to permit intervention, the Firm respectfully requests that any denial be expressly without prejudice and that the order record Arch's agreement to arbitrate after allocation.

## IV. CONCLUSION

Both Carriers agree a defense was owed throughout the underlying action; they dispute only who owed it and when. That question is the gateway to the Firm's



THEODORA ORINGHER COUNSELORS AT LAW

statutory right to payment and arbitration of more than $7 million in unpaid defense fees and costs, and neither Carrier will advocate the Firm's position on it. For the foregoing reasons, Theodora Oringher PC respectfully requests that the Court grant its Motion to Intervene under Rule 24(b), or, in the alternative, grant intervention as of right under Rule 24(a)(2). Should the Court deny the Motion, the Firm respectfully requests that the denial be expressly without prejudice and that the order record Arch's agreement to arbitrate under section 2860(c) following allocation.

DATED: November 18, 2026

THEODORA ORINGHER PC

By: [signature]

Kevin A. Dorse
Jessica N. Walker
Attorneys for Proposed Plaintiff-Intervenor, Theodora Oringher PC

THEODORA TO ORINGHER COUNSELORS AT LAW

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Proposed Plaintiff-Intervenor, Theodora Oringher PC, certifies that this brief contains 6,994 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated ____________.

DATED: November 18, 2026

Kevin A. Dorse